1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

VICKI L. LAIRD,                                              NO.  C11-1647-RSL-JPD

9
                                  Plaintiff,

10
        v.                                                   REPORT AND
                                                             RECOMMENDATION
11
MICHAEL J. ASTRUE, Commissioner of
Social Security,

12
                                  Defendant.

13

14          Plaintiff Vicki L. Laird appeals the final decision of the Commissioner of the Social

15   Security Administration ("Commissioner") which denied his applications for Disability

16   Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33,

17   after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below,

18   the Court recommends that the Commissioner's decision be reversed and remanded for further

19   proceedings.

20                  I.          FACTS AND PROCEDURAL HISTORY

21          Plaintiff, as of her date last insured, was a 50 year-old woman with at least a high

22   school education.  Administrative Record ("AR") at 25.  Her past work experience includes

23   employment as a shipping and receiving clerk.  *Id.*  Plaintiff was last gainfully employed in

24

REPORT AND RECOMMENDATION - 1

2000, asserts an onset date of February 8, 2000 and has a date last insured for DIB of March 31, 2005.  AR at 14.

On June 30, 2004, she filed an application for DIB.  AR at 106.  Plaintiff asserts that she is disabled due to chronic pain syndrome/fibromyalgia, dysthymia, and somatic focus.  AR at 17.

The Commissioner denied plaintiff's claim initially and on reconsideration.  Plaintiff requested a hearing which took place on October 30, 2007.  AR at 106.  The transcript of that hearing was not included in the Administrative Record.  On November 14, 2007, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on a finding that plaintiff could perform a specific job existing in significant numbers in the national economy.  AR at 106-11.  Plaintiff's administrative appeal of the ALJ's decision to the Appeals Council resulted in a remand for further proceedings, and the administrative hearing took place on June 18, 2009.  AR at 28-73.  Because a medical expert was not available that day, a second administrative hearing took place on July 15, 2009.  AR at 74-98.  This resulted in an opinion from the ALJ which also denied DIB benefits to the plaintiff.  AR at 14-27.  The Appeals Council denied further review, AR at 7-11, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  Plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. No. 1.

## II.     JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by

REPORT AND RECOMMENDATION - 2

1    substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

2    Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

3    such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

4    *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

5    (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in

6    medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*,

7    53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a

8    whole, it may neither reweigh the evidence nor substitute its judgment for that of the

9    Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is

10   susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

11   must be upheld.  *Id.*

12          The Court may direct an award of benefits where "the record has been fully developed

13   and further administrative proceedings would serve no useful purpose."  *McCartey v.*

14   *Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292

15   (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the
> claimant's evidence; (2) there are no outstanding issues that must be resolved
> before a determination of disability can be made; and (3) it is clear from the
> record that the ALJ would be required to find the claimant disabled if he
> considered the claimant's evidence.

19   *Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that

20   erroneously rejected evidence may be credited when all three elements are met).

21                          IV.     EVALUATING DISABILITY

22          As the claimant, Ms. Laird bears the burden of proving that she is disabled within the

23   meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th

24   Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in

REPORT AND RECOMMENDATION - 3

any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments, she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d),

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

V.      DECISION BELOW

On September 23, 2009, the ALJ issued a decision finding the following:

1.      The claimant last met the insured status requirements of the Social Security Act on March 31, 2005.

2.      The claimant did not engage in substantial gainful activity during the period from her alleged onset date of February 8, 2000 through her date last insured of March 31, 2005.

3.      Through the date last insured, the claimant had the following severe impairments: chronic pain syndrome/fibromyalgia, dysthymia, and somatic focus.

4.      Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.   After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform stand/walk about 4-5 hours in an 8 hour work day, to sit about 6 hours in an 8 hour work day, and could lift 20 pounds occasionally. Mentally she had the capacity to perform simple, repetitive tasks and could interact appropriately with the supervisors and work with others.

6.   Through the date last insured, the claimant was unable to perform her past relevant work.

7.   The claimant was born on XXXXX, 1954 and was 50 years old, which is defined, of the purposes of this decision, as an individual closely approaching advanced age, on the date last insured.[2]

8.   The claimant has at least a high school education and is able to communicate in English.

9.   The claimant has acquired work skills from past relevant work.

10.  Considering the claimant's age, education, work experience, and residual functional capacity, the claimant had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy.

11.  The claimant was not under a disability, as defined in the Social Security Act, at any time from February 8, 2000, the alleged onset date, through March 31, 2005, the date last insured.

AR at 16-26.

## VI.   ISSUES ON APPEAL

The principal issues on appeal are:

1.   Did the ALJ properly evaluate the testimony of the Medical Expert?

2.   Did the ALJ err at Step 5 of the sequential process?

3.   Does this case require remand because the transcript of the previous administrative hearing was not included?

4.   Did the ALJ properly evaluate the lay-witness testimony of plaintiff's husband?

Dkt. No. 11 at 1-2.

_____

[2]   The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington,

REPORT AND RECOMMENDATION - 6

1

VII.    DISCUSSION

2

A.    The ALJ Did Not Properly Evaluate the Testimony of the Medical Expert

3

At plaintiff's administrative hearing, the ALJ called psychiatrist Robert McDevitt,

4

M.D. to testify as a medical expert ("ME").  AR at 88-97.  The testimony was by telephone,

5

and there was a substantial amount of talk-over in the transcript.  The following testimony took

6

place:

7
8
9
10
11

> Q:    …the doctor concluded, in her sort of summary paragraph that can be
> found at a couple of pages but particularly on 6F10 that the CESD was
> consistent with a high level of depressive symptoms she reports on
> interviewing.  And so she had talked about a pattern of anxious rumination --
> and this is in 2001 -- fatigue, guilt, worthlessness, anhedonia, sadness for most
> of the day, daily irritability.  Now, Dr. Sandvic, in 8F, in his summary sort of
> paragraph, also indicate she was having a depressive cycle that waxed and
> waned --

12

> A:    Right.

13

> Q:    --somewhat in accord with her -- I guess in tandem, perhaps with her
> physical --

14

> A:    Right.

15
16

> Q:    -- stability.  So, is that what you're talking about, where the -- her
> psychological symptoms might interfere with her ability to perform work on a
> consistent --

17

> A:    On a --

18

> Q:    -- basis?

19

> A:    -- consistent basis.  Yeah.

20

> Q:    So she would have days --

21
22

> A:    She's not impaired totally, but *there's (sic) times that she would be.*  I
> think the biggest issue has been that there's been a pattern of activity and
> inactivity over the years, and that's pretty well predicted in Dr. Sinclair's notes.

23
24

> Q:    And so from that we might conclude that, even at the, the lightest levels
> of work, she might have days where her fibromyalgia and her psychological
> impairments combine to keep her from being able to function and maybe get to
> work on those few days?

REPORT AND RECOMMENDATION - 7

1       A:      Yes.

2  AR at 96-7 (emphasis added).  This was the end of the ME's testimony.  Inexplicably, the ALJ

3  did not ask any follow up questions regarding this testimony.  In her opinion, the ALJ

4  dismissed the colloquy as vague.

> As to the testimony of the Medical Expert at the hearing, psychiatrist Dr.
> McDevitt, it has been discussed in large part above.  However, he also testified
> at the hearing that Dr. Denny said that the claimant's pain syndrome would
> interfere with the claimant working on a regular basis.  I have reviewed that
> report and Dr. Denny does not make any functional assessment as to capacity,
> but instead summarizes what the claimant reports to her.  In addition, Dr.
> McDevitt made a statement that the claimant was not impaired totally but there
> had been inactivity over the years.  This is too vague to know what he meant in
> terms of functioning level as to residual functional capacity and is not given any
> weight.  Then the claimant's attorney asked Dr. McDevitt the following
> question:  "Even at the lightest levels of work, her combined impairments may
> be where she's unable to function?"  Dr. McDevitt answered: "Yes."  I take his
> answer at face value and read no more into it.  He is merely saying what the
> *combined impairments could possibly result in, not what, in his opinion, they do
> result in.  What they do result in is the question before me here.*

AR at 20 (emphasis added).  Contrary to the ALJ's opinion, Dr. McDevitt's testimony

included the doctor's opinion as to the outcome of the combined impairments based upon his

review of the medical evidence ("she's not impaired totally, but there's (sic) times that she

would be.").  Moreover, the ALJ's decision also states that the ME's testimony was "too

vague" to know what the ME meant, and therefore it was rejected.  The ALJ was directed by

the Appeals Council to "obtain evidence from a medical expert to assist in determining the

severity and onset of the claimant's mental impairment" (AR at 102).  The ME was before the

ALJ, and, as the ALJ noted, provided some vague responses.  However, this "vagueness" could

have been cleared up.  The ALJ "has an independent 'duty to fully and fairly develop the

record.'"  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (*quoting Smolen v.

Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). The ALJ's "duty exists even when the claimant is

represented by counsel."  *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) (per curiam)

REPORT AND RECOMMENDATION - 8

(*citing Driggins v. Harris,* 657 F.2d 187, 188 (8th Cir. 1981)).  The ALJ has an obligation to develop the record.  This does not mean that the ALJ must always lead to unending questions.  Rather, the ALJ's duty to supplement the record is triggered only if there is ambiguous evidence or if the record is inadequate to allow for proper evaluation of the evidence.  *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *Tonapetyan*, 242 F.3d at 1150.  Ambiguity (or vagueness) is exactly what was presented here.  To dismiss evidence as "too vague to know what he meant" when the ME who was called to provide the evidence was before the ALJ, and when the ALJ failed to ask any questions to clear up the vagueness, is inconsistent with the ALJ's obligation to develop the record.  This requires remand.

B.      The ALJ May Have Erred at Step 5

The RFC found by the ALJ was the ability "to perform stand/walk about 4-5 hours in an 8 hour work day, to sit about 6 hours in an 8 hour work day, and could lift 20 pounds occasionally.  Mentally she had the capacity to perform simple, repetitive tasks and could interact appropriately with supervisors and work with others."  AR at 20.  The ALJ then concluded as to plaintiff's physical impairments, this was "close" enough to the six hour standing and/or walking requirement of "light" work.  AR at 26.  There is no authority for this proposition.  *See* SSR 83-10.  The Commissioner agrees that the ALJ erred in finding that plaintiff could perform "light" work, but also argues that because the plaintiff could do sedentary work, then any error was harmless.  Dkt. 12 at 9.

The plaintiff, however, argues that if the plaintiff's physical RFC were to be limited to sedentary work, then it is not clear whether the jobs found to have existed required a mental RFC of only "simple repetitive tasks."  Dkt. 11 at 8.  The hypothetical posed to the vocational expert ("VE") described the non-exertional limitations of an individual who "can perform detailed and complex tasks, but could not perform them consistently through the course of a

workday.  This individual can understand and recall simple repetitive tasks consistently through the course of a workday."  AR at 62.  Due to the way the hypothetical was formed, it is not readily evident that plaintiff could perform the jobs described by the VE, because the RFC does not include the ability to perform "detailed and complex tasks" but unable to perform them consistently through the course of a workday, and the jobs as described by the VE do not indicate if they would otherwise fit within the category of being done without the ability to perform "detailed and complex tasks," albeit not consistently.

Because this matter is being remanded for additional consideration regarding plaintiff's RFC in light of the error involving Dr. McDevitt's testimony, on remand, the ALJ should also call a VE to provide testimony regarding plaintiff's ability to work at a "light" exertional level, and what jobs existed, if any, given plaintiff's non-exertional limitations.

C.      Prior Testimony

Plaintiff also argues that her prior testimony should have been part of the record.  It is unnecessary for this Court to resolve whether this by itself would constitute grounds for reversal and remand.  However, because this matter is already being remanded, plaintiff's testimony from her prior administrative hearing should be included if it is available.

D.      Husband's Testimony

Plaintiff's final assignment of error is that the ALJ failed to appropriately evaluate the testimony of plaintiff's husband.  In order to determine whether a claimant is disabled, an ALJ may consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends.  *See* 20 C.F.R. § 404.1513(d).  Such testimony regarding a claimant's symptoms or how an impairment affects his ability to work is competent evidence, and cannot be disregarded without comment.  *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  If an

ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony. *Dodrill,* 12 F.3d at 919.

The plaintiff's husband testified generally about plaintiff's limitations as he perceived them. The ALJ summarized the testimony, but then discounted it as follows:

> Her husband testified that she was not now active, strong, and energetic like she once was, that she limps, takes medications, has problems sleeping, need to keep calendars and lists to do things, and has limited walking ability. He also completed a third party function report in July 2004. He indicated a need for her to take sleeping aids and needing to take rests. He stated that she did not have any problems with getting along with family, friends, neighbors, or others and that she did not have any problems with authority figures such as police, bosses, landlords or teachers. He said he had taken over the household finances due to problems when she had come out of the hospital. He noted her pain to be exacerbated by exertion. The third party statement has been considered. As discussed above, much of it indicates general activities consistent with the physical residual functional capacity. Finding a lowered level of physical capacity than she had in her past recognizes that there may be exacerbation when physical activity is at a higher level. His concerns as to some loss as to some change in mental status from the past is reflected in the mental residual functional capacity reduction to simple repetitive work. While her husband stated that he did not see any job that she could do and some of his indications may be of more limitation than found here, I recognize that his reports are naturally influenced by his affection for his wife. The possibility of secondary gain is also a factor to be considered as to both of them. While his wife is now home performing "stay at home mom" duties, she no longer contributes a second source of funds to the household.

AR at 24-25. It is improper to reject lay-witness statements based solely on an assumed financial interest. *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996). Unfortunately, however, this appears to be exactly what the ALJ did. On remand, the ALJ should reevaluate the testimony of Mr. Laird, and if she intends to discount it, should provide germane reasons for doing so.

REPORT AND RECOMMENDATION - 11

1

VIII.   CONCLUSION

2          For the foregoing reasons, the Court recommends that this case be REVERSED and

3  REMANDED to the Commissioner for further proceedings not inconsistent with the Court's

4  instructions.  A proposed order accompanies this Report and Recommendation.

5          DATED this 13th day of July, 2012.

6

7                                                          _____

8                                                          JAMES P. DONOHUE
                                                           United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 12